*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DAVID LARONE WILLIAMS,

        Defendant-Appellant.

UNPUBLISHED
June 20, 2019

No. 338926
St. Clair Circuit Court
LC No. 16-002881-FH

Before: GADOLA, P.J., and BOONSTRA and SWARTZLE, JJ.

PER CURIAM.

During an attempted traffic stop, defendant fled from police. After police stopped him, they discovered that defendant's license was suspended and found marijuana in the vehicle. The responding police officer's dash-cam video showed that defendant discarded something, and police found bags of heroin and cocaine, in an amount and packaging indicative of sales, in that area. On appeal from defendant's convictions, his appellate counsel raises arguments regarding ineffective assistance of counsel and sentencing. Defendant separately raises arguments regarding video evidence and ineffective assistance of counsel. We affirm defendant's convictions and individual sentences but remand to the trial court for an articulation of its rationale for imposing a consecutive sentence.

## I. BACKGROUND

Defendant appeals as of right his jury-trial convictions of two counts of possession with intent to deliver less than 50 grams of a controlled substance (PWID), MCL 333.7401(2)(a)(*iv*); fourth-degree fleeing or eluding a police officer, MCL 257.602a; operating a vehicle with a suspended license, second or subsequent offense (DWLS), MCL 257.904(1); and resisting or obstructing a police officer (R&O), MCL 750.81d(1). The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to 10 to 25 years in prison for each PWID conviction, 365 days each for the fleeing or eluding and DWLS convictions, and 5 to 15 years in prison for the R&O conviction, with the sentence for the R&O conviction to be served consecutive to the sentences for the drug convictions.

-1-

On October 11, 2016, Port Huron Police Officer Clinton Thom attempted to stop defendant's vehicle for a violation of the Motor Vehicle Code. Defendant fled and eventually pulled into the driveway of a residence. Although Officer Thom ordered him to stay in his vehicle, defendant got out and began walking toward the house. When Officer Thom detained and handcuffed him, defendant told Officer Thom that his driver's license was suspended, which another officer confirmed. The police found a syringe near the vehicle and defendant's passenger, Christina Stone, told police that defendant provided her with heroin several times that evening. Officer Thom reviewed his dash-cam video and observed defendant discard something in a garden area near the residence. Police subsequently found bags of heroin and cocaine, in an amount and packaging indicative of sales, in that area. Police also found marijuana on the floorboard of the vehicle. Police subsequently obtained a search warrant for a cell phone that was found on the driver's seat of the vehicle, and the cell phone contained text messages that were indicative of drug transactions. A jury convicted defendant of the offenses listed above, but found him not guilty of possession of marijuana.

On appeal to this Court, defendant filed a motion to remand in which he argued that remand to develop a factual record was necessary, regarding whether trial counsel rendered ineffective assistance of counsel. Defendant argued that trial counsel was ineffective for failing to file a motion to suppress the cell-phone evidence on the basis that the affidavit submitted in support of the search-warrant request failed to establish probable cause to search the phone. This Court denied the motion to remand but ordered that defendant could rely on the search warrant and its underlying affidavit in arguing the issues on appeal, even though those documents were not part of the trial-court record. *People v Williams*, unpublished order of the Court of Appeals, entered January 25, 2018 (Docket No. 338926).

Defendant subsequently filed a motion to add an additional ground for appeal and a related motion to remand. As his additional ground for appeal, defendant argued that trial counsel was ineffective for failing to impeach Stone with a prior conviction involving theft or dishonesty, i.e., second-degree home invasion and third-degree retail fraud. This Court granted the motion to remand on that issue. *People v Williams*, unpublished order of the Court of Appeals, entered November 13, 2018 (Docket No. 338926). This Court directed the trial court to address, on remand, whether Stone's conviction for second-degree home invasion included an element of theft so as to be admissible for impeachment purposes under MRE 609(a).

After holding an evidentiary hearing on remand, the trial court denied defendant's motion for a new trial, finding that defendant's trial counsel was not ineffective for failing to impeach Stone with her prior convictions. The trial court found that defendant's trial counsel could not have used Stone's conviction for third-degree retail fraud to impeach her credibility under MRE 609(a)(1) or (a)(2) because it was not a crime containing an element of dishonesty or false statement, and it was not a crime involving an element of theft that was punishable by more than one year in prison. With regard to Stone's home-invasion conviction, the trial court assumed that evidence of this conviction would have been admissible under MRE 609, but nonetheless found that trial counsel was not ineffective for failing to impeach Stone with this conviction.

In a supplemental brief filed with this Court after the trial-court remand, defendant argued that his trial counsel was ineffective for failing to impeach Stone with her prior convictions for second-degree home invasion and third-degree retail fraud.

-2-

## II. ANALYSIS

## A. ISSUES RAISED BY DEFENSE COUNSEL

## 1. SUPPRESSION OF EVIDENCE SEIZED FROM A CELL PHONE

Defendant first argues that his trial counsel was ineffective for failing to file a motion to suppress the evidence seized from the search of the cell phone based on the argument that the search-warrant affidavit failed to establish probable cause to justify a search. Because defendant did not raise this claim of ineffective assistance of counsel in a motion for a new trial or an evidentiary hearing in the trial court and this Court denied his motion to remand related to this issue, our review is limited to mistakes apparent from the record. *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012).

In *Heft*, 299 Mich App at 80-81, this Court stated:

> A criminal defendant has the fundamental right to effective assistance of counsel. However, it is the defendant's burden to prove that counsel did not provide effective assistance. To prove that defense counsel was not effective, the defendant must show that (1) defense counsel's performance was so deficient that it fell below an objective standard of reasonableness and (2) there is a reasonable probability that defense counsel's deficient performance prejudiced the defendant. The defendant was prejudiced if, but for defense counsel's errors, the result of the proceeding would have been different.

This Court further observed:

> We give defense counsel wide discretion in matters of trial strategy because counsel may be required to take calculated risks to win a case. To show that defense counsel's performance was objectively unreasonable, the defendant must overcome the strong presumption that defense counsel's decisions constituted sound trial strategy. This Court will not substitute its judgment for that of defense counsel or review decisions with the benefit of hindsight. [*Id*. at 83.]

Defendant argues that the evidence obtained from his cell phone should have been suppressed because the search-warrant affidavit failed to establish probable cause to justify a search. "A search warrant may only be issued upon a showing of probable cause." *People v Unger*, 278 Mich App 210, 244; 749 NW2d 272 (2008). "Probable cause to issue a search warrant exists if there is a substantial basis for inferring a fair probability that contraband or evidence of a crime exists in the stated place. The affidavit underlying the warrant must be read in a common-sense and realistic manner." *Id*. (cleaned up).

Regardless of whether the search-warrant affidavit provided probable cause to issue a search warrant for the cell phone, defendant fails to overcome the presumption that trial counsel's decision not to file a motion to suppress the messages found in the search of the cell phone was sound trial strategy.

As a Court far removed from the passion, dust, and grit of the courtroom, we must be especially careful not to second-guess or condemn with hindsight the decisions of defense counsel. A defense attorney must enjoy great discretion in the trying of a case—especially with regard to trial strategy and tactics. After all, the attorney witnessed or conducted voir dire, understood the credibility and demeanor of witnesses and his client, grappled with the evidence and testimony, and sensed the prosecutor's strategy. We only have the cold record. [*People v Pickens*, 446 Mich 298, 330; 521 NW2d 797 (1994) (citation omitted).]

Defendant's trial theory was that the cell phone was not his. At the plea hearing, defendant expressly stated that he did not own the cell phone. At trial, defendant's trial counsel questioned whether the owner of the cell phone had been identified, elicited testimony that the cell phone was not registered to defendant, and suggested in his closing argument that someone else had the phone.

Consistent with defendant's trial theory, his trial counsel elected not to pursue a motion to suppress the evidence seized during the search of the phone. In an offer of proof submitted in support of defendant's motion to remand regarding this issue, his appellate counsel asserted that defendant's trial attorney admitted that he considered filing a motion to suppress, but ultimately decided not to file the motion because he thought it would be denied and because defendant told him "not to bother with the phone because it was not his." Trial counsel confirmed this at the evidentiary hearing on remand regarding Stone's prior convictions, during which he testified that defendant did not own the cell phone, but admitted using it, so counsel did not believe that he had standing to contest anything related to the phone. He further testified that, during trial, he asked defendant whether they should object to the phone, even though they had previously decided not to so do, and defendant said no. He also testified that defendant took a very active role in his defense.

Defendant's trial counsel chose to advance his client's argument that the cell phone was not his and, therefore, the text messages found on the phone were irrelevant to defendant's guilt of the drug charges. Defendant could not have successfully moved to suppress the messages found on the phone without admitting that the phone was his. Given these facts, defendant has failed to overcome the presumption that trial counsel's decision not to file a motion to suppress the cell phone evidence was objectively reasonable. Therefore, defendant is not entitled to relief on this issue. See *Heft*, 299 Mich App at 80-81.

2. FAILURE TO IMPEACH A WITNESS

Defendant next argues that his trial counsel was ineffective for failing to impeach Stone with her prior convictions for second-degree home invasion and third-degree retail fraud.

"Generally, whether a defendant had the effective assistance of counsel is a mixed question of fact and constitutional law. This Court reviews findings of fact for clear error and questions of law de novo." *Heft*, 299 Mich App at 80 (cleaned up). "The failure to reasonably investigate a case can constitute ineffective assistance of counsel." *People v Anderson*, 322 Mich App 622, 630; 912 NW2d 607 (2018). "Defense counsel's failure to present certain evidence will only constitute ineffective assistance of counsel if it deprived defendant of a

substantial defense." *People v Dunigan*, 299 Mich App 579, 589; 831 NW2d 243 (2013). Furthermore, "decisions regarding what evidence to present and which witnesses to call are presumed to be matters of trial strategy, and we will not second-guess strategic decisions with the benefit of hindsight." *Id*. at 589-590.

As explained above, the trial court denied defendant's motion for a new trial, finding that defendant's trial counsel was not ineffective for failing to impeach Stone in the manner now desired. Although defendant filed a supplemental brief on appeal regarding this issue, defendant failed to challenge the trial court's ruling that the third-degree retail fraud conviction was not admissible under MRE 609(a). Therefore, he has abandoned this issue. See *People v Payne*, 285 Mich App 181, 195; 774 NW2d 714 (2009). Further, if the conviction was not admissible under MRE 609(a), then trial counsel cannot be deemed ineffective for failing to seek its admission because trial counsel is not ineffective for failing to advocate a meritless position. See *id*. at 191. In any event, for the reasons further discussed below, there is no reasonable probability that trial counsel's failure to introduce evidence of this conviction affected the outcome of defendant's trial.

As for the home-invasion conviction, the trial court did not clearly err in finding that trial counsel's failure to investigate Stone as a potential witness was reasonable. Trial counsel testified at the evidentiary hearing that Stone did not appear for the preliminary examination and he did not believe that she would appear for trial. A few days before trial, he attempted to locate Stone in the county jail, but was unable to do so. The prosecutor had also informed trial counsel that she was confident about proceeding to trial without Stone.

Defendant also fails to establish that he was prejudiced by trial counsel's failure to expressly impeach Stone with her prior convictions. The trial court did not clearly err in finding that the evidence against defendant was strong and that the jury could have convicted defendant even if it disbelieved Stone's testimony. As a factual matter, the trial court determined on remand that the dash-cam video and the discovery of the drugs was the most compelling evidence of defendant's guilt. In addition, the jury convicted defendant of the charge related to the crack cocaine, even though Stone did not testify that defendant gave her any crack cocaine. This supports the trial court's finding that Stone's testimony was not dispositive of the drug convictions and that the jury would have convicted defendant even if it did not believe her or she did not testify at all. The jury was also aware that Stone was intoxicated that evening and that she had a possible motive to testify favorably for the prosecutor, given that she had not been charged with any crimes. Accordingly, there is no reasonable probability that the outcome of the trial would have been different if these convictions had been introduced to impeach Stone. See *Heft*, 299 Mich App at 81. Therefore, defendant is not entitled to relief on this issue.

### 3. DEPARTURE SENTENCE

Next, defendant argues that he is entitled to resentencing because the trial court departed from the sentencing-guidelines ranges when sentencing him for his convictions of PWID and R&O, but failed to justify the extent of its departures from the guidelines ranges.

"We review a trial court's upward departure from a defendant's calculated guidelines range for reasonableness." *People v Walden*, 319 Mich App 344, 351; 901 NW2d 142 (2017).

"We review the reasonableness of a sentence for an abuse of the trial court's discretion." *Id*. When reviewing a departure sentence for reasonableness, we must review whether the trial court abused its discretion by violating the principle of proportionality. *People v Steanhouse (On Remand)*, 322 Mich App 233, 237-238; 911 NW2d 253 (2017). "A trial court abuses its discretion if it violates the principle of proportionality test by failing to provide adequate reasons for the extent of the departure sentence imposed." *Id*. at 238 (cleaned up).

A trial court may impose a departure sentence when it determines that the recommended range under the guidelines is disproportionate, in either direction, to the seriousness of the crime. *Id*. When a trial court imposes such a sentence, factors that may be considered under the principle of proportionality standard include, but are not limited to:

> (1) the seriousness of the offense; (2) factors that were inadequately considered by the guidelines; and (3) factors not considered by the guidelines, . . . the defendant's misconduct while in custody, the defendant's expressions of remorse, and the defendant's potential for rehabilitation. [*Id*. at 238-239.]

"An appellate court must evaluate whether reasons exist to depart from the sentencing guidelines and whether the *extent* of the departure can satisfy the principle of proportionality." *Id*. at 239.

Defendant's prior record variable (PRV) and offense variable (OV) scores resulted in a recommended minimum sentence range of 19 to 76 months for his drug convictions and 5 to 46 months for his resisting or obstructing conviction. The trial court sentenced defendant to a minimum term of 120 months for each of his drug convictions, an upward departure of 44 months. The trial court further sentenced defendant to a minimum term of 60 months for his R&O conviction, an upward departure of 14 months.

Defendant argues that with the 60-month consecutive sentence for his R&O conviction, the extent of departure from the guidelines range for the drug offenses was 104 months. When a trial court imposes consecutive sentences, however, "each sentence is to be reviewed on its own merits" and "a proportionality challenge to a given sentence must be based on the individual term imposed and not on the cumulative effect of consecutive sentences." *People v Norfleet*, 317 Mich App 649, 663; 897 NW2d 195 (2016). Therefore, it is inappropriate to rely on the cumulative effect of defendant's consecutive sentences to measure the extent of the departure from the guidelines range for defendant's drug convictions.

In sentencing defendant, the trial court stated that defendant was dangerous, had done nothing productive with his life, and had been nothing but a danger to society. The trial court noted that even while defendant was on parole, he did not "have the good sense not to commit more crimes." The trial court also stated that defendant's crimes were "especially serious because they introduce misery into the lives of others and you don't care." Defendant continually interrupted the trial court while it was imposing sentence, which led to his removal from the courtroom. The trial court stated that defendant's behavior showed that he was defiant and did not care about anyone but himself. The trial court stated that defendant was "truly a danger to society," noted that his PRV score of 125 points was significantly higher than the 75 points necessary to place defendant in the highest category of prior offenders, and noted that defendant had been convicted five different times of possessing illegal substances with the intent

to deliver. The trial court also found that defendant had committed seven prior felonies while on parole and, in this case, he was involved in drug trafficking mere days after being paroled. The trial court agreed with the prosecutor that the sentencing guidelines did not adequately consider those factors.

In summary, the trial court found that the sentencing guidelines did not adequately take into account that (1) defendant's PRV score did not reflect the extent of defendant's prior criminal history; (2) defendant's criminal history included five prior convictions for possession with intent to deliver controlled substances, which was the same conduct at issue in this case; (3) defendant had committed seven of his prior felonies while on parole, just as in this case; and (4) this case was "eerily similar" to an earlier case. Defendant argues that his criminal history was covered by the PRVs and, in particular, PRV 6. Although the trial court assessed 10 points for PRV 6 for being on parole when he committed the instant offenses, see MCL 777.56, this score did not take into account the fact that defendant had committed seven other offenses while on parole. In addition, while the other PRVs took into account defendant's prior felony and misdemeanor convictions, they did not account for the fact that defendant had five convictions for the specific crime of possession with intent to deliver a controlled substance, the same type of conduct involved in this case, or that he had been involved in another very similar case. The trial court did not abuse its discretion by finding that there were circumstances not adequately accounted for or considered by the guidelines.

The trial court was also required to "explain how the extent of the departure is proportionate to the seriousness of the circumstances surrounding the offense and the offender." *Steanhouse (On Remand)*, 322 Mich App at 239. When it imposed a sentence 44 months above the guidelines range for the drug convictions and 14 months above the guidelines range for the R&O conviction, the trial court found that defendant's PRV score of 125 points was significantly above the 75 points necessary to place defendant in the highest category of repeat offenders for both Class D and Class G offenses. See MCL 777.65; MCL 777.68. The trial court also considered the seriousness of the drug offenses, which caused harm to others, the danger that defendant posed to society, and defendant's attitude, which suggested a lack of remorse. Given these factors, defendant's minimum sentences of 120 months, rather than 76 months, and 60 months, rather than 46 months, do not violate the principle of proportionality.

### 4. CONSECUTIVE SENTENCING

Defendant also argues that the trial court abused its discretion by ordering that his sentence for the R&O conviction must be served consecutively to his sentences for the drug convictions, without providing an explanation for the consecutive sentence. In *Norfleet*, 317 Mich App at 654, this Court stated:

> [W]hen a statute grants a trial court discretion to impose a consecutive sentence, the trial court's decision to do so is reviewed for an abuse of discretion, i.e., whether the trial court's decision was outside the range of reasonable and principled outcomes. Accordingly, trial courts imposing one or more discretionary consecutive sentences are required to articulate on the record the reasons for each consecutive sentence imposed. [Citation omitted.]

In this case, the trial court explained why it was departing from the sentencing guidelines, but it did not articulate any reasons for imposing a consecutive sentence. Although the prosecutor argues that the trial court relied on the same reasons for departing from the guidelines to justify imposing a consecutive sentence, this is not clear from the trial court's statements on the record at sentencing, nor is it clear that the trial court adopted the prosecutor's arguments in support of consecutive sentencing.

Accordingly, we remand for the limited purpose of having the trial court articulate on the record its rationale for the consecutive sentence imposed. We take no position regarding whether a consecutive sentence is proper on the facts of this case. We simply remand so the trial court may comply with the requirement of *Norfleet* that a trial court must articulate on the record its reasons for imposing a consecutive sentence.

## B. DEFENDANT'S STANDARD 4 BRIEF

Defendant raises two additional issues in a brief filed pursuant to Supreme Court Administrative Order, 2004-6, Standard 4.[1]

### 1. VIDEO EVIDENCE

First, defendant argues that he was denied due process by the prosecutor's refusal to play certain portions of the dash-cam video for the jury.

After opening statements, defendant's trial counsel argued that the entire video from Officer Thom's patrol car should be shown to the jury, not just the second portion, as the prosecutor was seeking to do. Defendant's trial counsel argued that the first portion, which showed several officers and a canine searching the area without finding any contraband, should be played, in addition to the second portion, in which the officers found narcotics. The prosecutor argued that the video was more than an hour long and she intended to play the portions requested by defendant, but there were other portions that would be omitted, including the conversation during which defendant stated that he was on parole. Defendant's trial counsel stated that he did not have an issue with what the prosecutor intended to play, but that he might still try to use other parts of the video to impeach witnesses. At the end of Stone's testimony, at defense counsel's request, a portion of the video of Stone's interactions with police was played for the jury.

On appeal, defendant argues that the prosecutor withheld portions of the video that showed "corrupting, coercion, inconsistencies and influence by police officers." Although defendant suggests that the prosecutor suppressed evidence in violation of *Brady v Maryland*, 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963), he fails to establish that the prosecutor actually suppressed any evidence. Rather, the basis of defendant's argument is that the

---

[1] Although the "Statement of Questions" includes a third issue statement, which appears to assert a claim of prosecutorial error, defendant fails to provide any argument regarding this issue in the body of his brief. Therefore, it is abandoned. See *Payne*, 285 Mich App at 195.

prosecutor's failure to show the entire video to the jury denied him a fair trial. Defendant appears to primarily argue that (1) the jury was not able to see his alleged throwing gesture in slow motion, (2) the jury was not shown Stone's complete statements to the police officers, and (3) the jury was not shown when the police found the syringe.

As discussed earlier, the parties came to an agreement at trial regarding the portions of the video from Officer Thom's car that would be shown to the jury. The prosecutor also subsequently played a portion of the video showing the interview of Stone, at defendant's request. By expressly agreeing to the specific portions of the video that would be shown to the jury, defendant waived any argument that other portions of the video should have been shown. See *People v Foster*, 319 Mich App 365, 383 n 9; 901 NW2d 127 (2017) (stating that "waiver is the intentional relinquishment or abandonment of a known right") (cleaned up).

Even if defendant had not waived this issue, defendant has failed to establish a plain error affecting his substantial rights. First, defendant has not clearly established that the jury did not have the ability to view the video in slow motion. During deliberations, the jury asked the trial court to play the portion of the video from the time that the officer turned his car until defendant was handcuffed. The jury did not request to see the video in slow motion. Indeed, it would appear that viewing the video in slow motion would have made defendant's alleged throwing gesture easier to see. The jury, nonetheless, found defendant guilty of the drug offenses. Accordingly, defendant fails to establish plain error affecting his substantial rights.

With regard to Stone's statements, defendant argues that the jury never heard her say that she was on probation for heroin, did not hear her continuously asking when she could go home, and did not hear an officer telling her that she could get paid for providing information. Again, however, this issue is waived because defendant requested that specific portions of the video of Stone be played and those portions were played at trial. Further, the record does not support defendant's claim that the portions of the video now mentioned were not played for the jury. All of these portions are contained in the videos in Exhibits 20 and 21 provided to this Court.

But even if these portions of the video were not played for the jury, defendant fails to establish prejudice. Defendant does not argue how the omission of these portions affected the outcome of the case. Defendant appears to suggest that the police coerced or influenced Stone and that the jury should have been given the opportunity to see the alleged coercion and influence. The trial testimony, however, indicated that Stone told the police that she had used heroin and tossed the syringe, but was not arrested or charged with any crimes. An officer also testified regarding the fact that Stone was on probation and that he advised her that she could tell her father whatever she wanted to tell him. Thus, the jury was aware of Stone's possible motivation to testify favorably for the prosecutor and was free to disbelieve her testimony.

Finally, defendant argues that if the portion of the video in which the police found the syringe had been shown to the jury, the jury would have seen "4 police officers and a K-9 basically step on it for 15 minutes." Contrary to defendant's assertions, however, Exhibit 21 appears to show the officers' discovery of the syringe and defendant fails to establish that this portion was not shown to the jury. Defendant also fails to establish how the failure to show this portion of the video to the jury affected the outcome of the case. To the extent that it showed that the syringe was not found immediately, and thus would have been stepped on by the police,

the trial testimony similarly led to this inference. Furthermore, defendant's drug convictions were based on the substantial amounts of heroin and cocaine found, not the syringe.

## 2. SEARCH OF CELL PHONE

Defendant also argues that his Fourth Amendment rights were violated because Officer Thom allegedly read text messages from the cell phone before obtaining a search warrant and that trial counsel was ineffective for failing to file a motion to suppress the text messages on that ground.

Defendant failed to preserve his claim that the police searched his cell phone without a warrant by filing a motion to suppress the evidence on this ground. See *Unger*, 278 Mich App at 243. This Court reviews "unpreserved constitutional issues for plain error affecting defendant's substantial rights." *Henry (After Remand)*, 305 Mich App at 160. Defendant also failed to raise his claim of ineffective assistance of counsel in a motion for a new trial or an evidentiary hearing in the trial court. See *Heft*, 299 Mich App at 80. Thus, our review is limited to mistakes apparent from the record. *Id.*

The United States Supreme Court has held that a search warrant is required to search a cell phone. See *Riley v California*, 573 US 373; 134 S Ct 2473; 189 L Ed 2d 430 (2014). Defendant claims that the Cellebrite report shows that Officer Thom read two text messages on the cell phone before obtaining a warrant. According to defendant, "page 40 message # 3 and message #4 was read at 4:27 a.m. and at 4:33 a.m. on Oct. 11, 2016 long after Mr. Williams had been in custody and no access to the cellphone." The search warrant was not issued until March 13, 2017.

At trial, the prosecutor entered into evidence a Cellebrite report detailing the dates and times when the cell phone sent or received text messages. A witness, however, testified at trial that the time listed on the trial exhibit was displayed in "Universal Coordinate Time zero" and that Eastern Time was actually four hours earlier. Accordingly, subtracting four hours from the times referenced by defendant would indicate that the messages were read at 12:27 a.m. and 12:33 a.m., respectively. At trial, Officer Thom testified that he first saw defendant's vehicle a little bit before 1:00 a.m. Thus, the record does not support defendant's claim that the messages were read by police, on the night of his arrest, without a warrant. Rather, the evidence supports a conclusion that defendant read the messages before his arrest. The fact that the next two messages, which were timestamped at 5:05 a.m. and 4:57 a.m. (i.e., 1:05 a.m. and 12:57 a.m. Eastern Time), are shown as unread further supports the conclusion that the police did not read any text messages that evening without a warrant. Accordingly, defendant has not established a plain error.

Defendant also fails to establish his claim of ineffective assistance of counsel. Given that defendant fails to establish that the messages were read without a warrant, he fails to establish the factual predicate for his claim. See *People v Jackson (On Reconsideration)*, 313 Mich App 409, 432; 884 NW2d 297 (2015).

We affirm defendant's convictions and individual sentences. We remand to the trial court for the limited purpose of having the trial court articulate on the record the reason underlying the imposition of consecutive sentencing. We do not retain jurisdiction.

/s/ Michael F. Gadola
/s/ Mark T. Boonstra
/s/ Brock A. Swartzle